Filed 9/24/25  P. v. Graves CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C101330 |
| Plaintiff and Respondent, | (Super. Ct. No. 18FE023682) |
| v. | |
| KINTE MARQUETTE GRAVES, | |
| Defendant and Appellant. | |

Defendant Kinte Marquette Graves fired multiple gun shots at his victim, T.J.  He pleaded no contest to assault with a semi-automatic firearm (Pen. Code, § 245, subd. (b), statutory section citations that follow are to the Penal Code).  Defendant admitted a firearm enhancement (§ 12055.25, subds. (a) and (d)) and a prior strike conviction (§§ 667, subds. (b)-(i) and § 1170.12).  In accordance with the plea agreement, the trial court sentenced defendant to 21 years in state prison.  Defendant appeals from the judgment.

On appeal, appointed counsel asks this court to review the record and determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436.)  Defendant filed a supplemental brief raising multiple contentions, none of which

1

have merit. We have, however, found a clerical error in the abstract of judgment. We affirm the judgment but will direct the trial court to correct the abstract of judgment to reflect that defendant was sentenced pursuant to sections 667, subdivision (b)-(i) and 1170.12.

### FACTS AND HISTORY OF THE PROCEEDINGS

On December 10, 2018, defendant "pulled out a [semi-automatic firearm], pointed it at [T.J.], and ultimately discharged approximately four rounds in her direction." Two days later, the People filed a criminal complaint charging defendant with assault with a semi-automatic firearm (§ 245, subd. (b)) and being a felon in possession of a semi-automatic firearm (§ 245, subd. (a)(2)). Relative to the assault charge, the People alleged defendant personally used a semi-automatic firearm in the commission of the crime. (§ 12022.5, subds. (a) and (d).)

The People also alleged defendant was twice previously convicted of a strike offense (§§ 667, subd. (e)(2), 1170.12, subd. (c)(2)), was "eligible for a three-strikes life sentence," and was previously convicted of a serious or violent felony (§§ 667, subd. (e)(2), 1170.12, subd. (c)(2)). Defendant was arraigned, taken into custody, and held without bail; the court issued a criminal protective order prohibiting defendant from making any contact with T.J.

On February 21, 2019, the People amended the complaint, and the trial court set bail at $2,000,000. On March 17, 2020, on defendant's motion, the trial court reduced defendant's bail to $1,000,000.

On April 22, 2020, defendant moved the court to reduce his bail to "something he can afford," something less than $500,000. He argued he was at "high risk" of being infected with COVID-19 while he was incarcerated. Defendant indicated he was "amenable to being placed on [an] ankle monitor." The court denied his motion finding defendant posed a "significant threat to public safety."

The preliminary hearing took place over two days in July 2020. Defendant was held to answer, and the amended complaint was deemed the information. The court denied another motion to reduce defendant's bail; bail remained set at $1,000,000.

On May 6, 2021, defendant again moved the trial court for a reduction in his bail to something he could afford. Defendant argued he was entitled to a reduction under the Supreme Court's then-recent decision in *In re Humphrey* (2021) 11 Cal.5th 135. He argued that electronic monitoring was "a less restrictive and sufficient condition to ensure" his appearance in court and protect public safety. The court denied his motion, finding there was "nothing less restrictive that [would] protect the public safety."

On June 24, 2022, the trial court heard defendant's motion to dismiss one of his prior strike convictions. Defendant argued the Supreme Court's decision in *People v. Vargas* (2014) 59 Cal.4th 635, compelled the court to dismiss one of his prior strike convictions because the two strikes were "closely connected in their commission, tried in the same proceeding, committed during the same course of criminal conduct, based on the same act, and committed at the same time against the same victim."

The trial court agreed with defendant and dismissed one of the prior strike allegations pursuant to *People v. Vargas*, *supra*, 59 Cal.4th 635. The court reduced defendant's bail to $600,000 to comply with the bail schedule and directed defendant to procure an electronic monitoring device within 48 hours of posting bail.

Defendant was in custody on June 30, 2022. Bail remained set at $600,000.

In August 2022, defendant moved the trial court for another bail reduction. He also moved the court to dismiss the firearm enhancement. Relying on section 1385, subdivision (c), defendant argued that imposing the firearm enhancement could result in a sentence exceeding 20 years. The trial court was, therefore, required to dismiss the enhancement unless dismissing the enhancement would " 'endanger public safety.' " The People opposed both motions.

3

On September 7, 2022, the trial court denied defendant's motion to dismiss the firearm enhancement. Shortly thereafter, the court reviewed defendant's bail and reset it to "no bail." On October 3, 2022, the court affirmed defendant would be held without bail.

A. Petitions for Diversion

On November 7, 2023, defendant petitioned the trial court for mental health diversion pursuant to section 1001.36. The People opposed defendant's petition.

In support of their opposition, among other things, the People argued defendant was not suitable for mental health diversion because he posed an unreasonable risk of danger to public safety, as his criminal history was extensive and violent. Defendant had been in custody or under the court's supervision since 1989 and he was on parole wearing an ankle monitor when he committed the current offense.

On December 12, 2023, the parties appeared before a court commissioner and stipulated to having defendant's petition for mental health diversion heard by the commissioner. After hearing from both parties, the court denied defendant's petition, finding him unsuitable for diversion: "the fact that he was on ankle monitor at the time, was not supposed to have access to firearms, and the fact that this was, you know, shooting six times with no warning shot would make him unsuitable. Also, I think the facts of his case - - I will further find that he is capable of committing a super strike based on the facts of this case."

On January 29, 2024, the trial court suspended criminal proceedings to allow defendant to be evaluated for developmental disability diversion pursuant to sections 1001.21 and 1001.22. Several months later, the trial court found defendant is not a person with a qualifying developmental disability. The court further held that even if defendant were eligible, the court would not grant diversion under section 1001.23

4

because, were he granted diversion, defendant posed an unreasonable risk of danger to public safety, as defined by section 1170.18.

The trial court reinstated the criminal proceedings.

B.      Plea, Judgment, and Sentence

On June 4, 2024, the trial court granted the People's motion to amend the information and heard defendant's change of plea.  Before entering into the plea agreement, however, defendant asked the court to exercise its discretion under Senate Bill No. 81 (2021-2022 Reg. Sess.) (Senate Bill No. 81), Senate Bill No. 620 (2017-2018 Reg. Sess.) (Senate Bill No. 620), the "five-year prior gun enhancement," "[t]he 1393 . . . strike felony enhancement," and Assembly Bill No. 600 (2023-2024 Reg. Sess.) (Assembly Bill No. 600).  Defendant also asked the court for "extra [work] credits."

The court responded to defendant:  "The Court's understanding . . . is that there is a plea agreement; in other words, an agreement between [the People] and [defendant]. . . .

"So I'm going to ask you this question, . . . [defendant].

"Are you prepared to accept the People's offer and enter into the plea agreement today?

"THE DEFENDANT:  Yes, ma'am."

In accordance with the negotiated plea agreement, defendant then pleaded no contest to assault with a semi-automatic firearm, admitted the firearm enhancement, and admitted he was previously convicted of a strike offense.  Defendant also admitted the prior strike conviction qualified him as a "serious felony recidivist under . . . section 667, [subdivision] (a)" and admitted to using "a weapon when committing the assault in this case" as an aggravating circumstance (with no consequence to the sentence).

Defendant waived referral to probation for a presentence report and the court sentenced him to the stipulated term of 21 years in state prison:  (1) the middle term of six years for assault with a semiautomatic firearm (doubled for the prior strike) (§§ 245,

5

1172.1); (2) the middle term of four years for the firearm enhancement (§ 12022.5, subds. (a) and (d)); and (3) an additional five years for the prior serious felony conviction (§ 667, subd. (a)).

The trial court awarded defendant 2,305 days of presentence credit and ordered him to pay various fines and fees. The remaining charges and allegations, along with a pending misdemeanor case, were dismissed on the People's motion.

Defendant timely appealed without a certificate of probable cause.

DISCUSSION

Appointed counsel filed an opening brief setting forth the facts of the case and asking this court to review the record and determine whether there are any arguable issues on appeal. (*People v. Wende*, *supra*, 25 Cal.3d 436.) Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing of the opening brief. He filed a supplemental brief raising multiple arguments which we address below.

I

*Mental Health Diversion*

Defendant contends the trial court had "no right to decide the ruling on [his] mental health [petition.]" He also claims the trial court erred in denying his petition for mental health diversion. These claims are barred on appeal because defendant failed to obtain a certificate of probable cause.

In general, a defendant who has pleaded guilty or no contest may not appeal the judgment of conviction without first obtaining a certificate of probable cause. (§ 1237.5; see also Cal. Rules of Court, rule 8.304(b).) "Exempt from this certificate requirement are postplea claims, including sentencing issues, that do not challenge the validity of the plea." (*People v. Cuevas* (2008) 44 Cal.4th 374, 379.) In determining whether a certificate of probable cause is required for a claim, "courts must look to the substance of

6

the appeal:  'the crucial issue is what the defendant is challenging, not the time or manner in which the challenge is made.'  [Citation.]  Hence, the critical inquiry is whether a challenge . . . is in substance a challenge to the validity of the plea, thus rendering the appeal subject to the requirements of section 1237.5."  (*People v. Panizzon* (1996) 13 Cal.4th 68, 76.)

In *People v. Robinson* (2024) 100 Cal.App.5th 133, the defendant argued ineffective assistance of counsel because his attorney did not request mental health diversion in the trial court.  (*Id*. at p. 135.)  The appellate court rejected the claim, explaining that because a defendant is only eligible for pretrial mental health diversion before a plea hearing or trial, the "failure to request pretrial mental health diversion cannot, by definition, be a 'matter occurring after the plea.' "  (*Id*. at pp. 135-136.)  Accordingly, defendant needed a certificate of probable cause to raise his claim on appeal.  (*Ibid*.)  The appellate court further explained that the claim was arguably a challenge to the validity of the plea because, had a motion for mental health diversion been made and granted, the defendant never would have entered the plea.  (*Id*. at p. 136, fn. 2.)

We agree with *Robinson*'s reasoning.  In the present matter, defendant moved for diversion before he pleaded no contest and, had the trial court granted diversion, defendant would not have pleaded no contest when he did.  Defendant thus appeals from a matter occurring before the plea that affects the validity of the plea, and a certificate of probable cause was required.  (See *People v. Moore* (2024) 104 Cal.App.5th 90, 94.)

II

*The Firearm Use Enhancement*

Defendant also contends the trial court improperly relied on his use of a firearm, an element of his assault with semi-automatic firearm conviction, to impose the firearm use enhancement (§ 12022.5, subds. (a), (d)).

7

"Generally, a defendant is exempt from a section 12022.5 enhancement if the 'use of a firearm is an element of' the charged offense. (§ 12022.5, subd. (a).) But section 12022.5 contains an exception if a defendant commits a section 245 violation using a firearm. (§ 12022.5, subd. (d).)" (*People v. Le* (2015) 61 Cal.4th 416, 420, fn. 3.) While defendant's conviction for assault with a semi-automatic firearm (§ 245, subd. (b)) included the element of using a firearm, his crime is not exempt from enhancement under section 12022.5, subdivision (a). (*Le*, at p. 420, fn. 3.)

III

*Prior Strike Conviction*

Defendant also contends the trial court improperly relied on his prior strike conviction to both double his base term under section 1170.12, and to add five years to his term under section 667, subdivision (a). Again, he is wrong. Such dual use of a prior strike was contemplated by the legislature and "does not run afoul of section 654's rule against double punishment." (*People v. Flores* (2021) 63 Cal.App.5th 368, 380; see *People v. Dotson* (1997) 16 Cal.4th 547, 557, 560 [applicable recidivist enhancements imposed in addition to third strike sentence].)

IV

*Change in Sentencing Laws*

In his supplemental brief, defendant lists the following changes in sentencing laws and says only, "they pertain to my sentence": (1) Senate Bill No. 81, and the concomitant changes to section 1385, subdivision (c); (2) Senate Bill No. 620; (3) Senate Bill No. 483 (2021-2022 Reg. Sess.) (Senate Bill No. 483); (4) Assembly Bill No. 2483 (2023-2024 Reg. Sess.) (Assembly Bill No. 2483); (5) Assembly Bill No. 600, and related amendments to section 1172.1. This purported claim also fails.

As an initial matter, Assembly Bill Nos. 2483 and 600 relate to resentencing procedures and do not apply here on direct appeal from defendant's original sentence. The remainder of defendant's claim is foreclosed because he failed to obtain a certificate of probable cause.

"The right to appeal is statutory only, and a party may not appeal a trial court's judgment, order or ruling unless such is expressly made appealable by statute." (*People v. Loper* (2015) 60 Cal.4th 1155, 1159.) "In general, [however,] a defendant may appeal from a final judgment of conviction, unless otherwise limited by sections 1237.1 and 1237.5." (*People v. Maultsby* (2012) 53 Cal.4th 296, 298-299, citing § 1237 and Cal. Rules of Court, rule 8.304(b).)

"Section 1237.5 provides that an appeal may not be taken after a plea of guilty or no contest unless the defendant has filed a statement showing reasonable grounds for appeal and the trial court has executed and filed a certificate of probable cause. This requirement does not apply, however, if the appeal is based upon grounds that arose after entry of the plea and that do not affect the validity of the plea." (*People v. French* (2008) 43 Cal.4th 36, 43.)

Again, " '[I]n determining whether section 1237.5 applies to a challenge of a sentence imposed after a plea of guilty or no contest, courts must look to the substance of the appeal: "[T]he crucial issue is what the defendant is challenging, not the time or manner in which the challenge is made." [Citation.] Hence, the critical inquiry is whether a challenge to the sentence is in substance a challenge to the validity of the plea, thus rendering the appeal subject to the requirements of section 1237.5.' " (*People v. French*, *supra*, 43 Cal.4th at p. 44.)

Senate Bill No. 81, Senate Bill No. 620, and Senate Bill No. 483 were in effect when defendant was sentenced in June 2024. Defendant is, therefore, challenging "the very sentence he negotiated as part of the plea bargain, defendant is, in substance,

9

attacking the validity of the plea." (*People v. Panizzon*, *supra*, 13 Cal.4th at p. 78.) Accordingly, defendant's claim fails for lack of a certificate of probable cause.

V

*Marsden Request*

Defendant moved this court for new appellate counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118.  This court denied that motion on April 28, 2025.

VI

*No Arguable Error But an Abstract of Judgment Correction*

Having undertaken an examination of the entire record, we find no other arguable error that would result in a disposition more favorable to defendant.

We have, however, identified a clerical error in the abstract of judgment that warrants correction.  In section 4 of the abstract, the trial court should have checked the box identifying defendant's sentence as one imposed pursuant to sections 667, subdivision (b) through (i) or 1170.12.

DISPOSITION

The judgment is affirmed.  The trial court is directed to correct the abstract of judgment to reflect defendant's sentence was imposed pursuant to sections 667,

subdivisions (b) through (i) or 1170.12.  The trial court is directed to forward a certified copy of the corrected abstract to the Department of Corrections and Rehabilitation.


_____

HULL, Acting P. J.

We concur:


_____

ROBIE, J.


_____

MESIWALA, J.